# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| LYNETTE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:10-cv-325 |
| | ) | |
| LaPORTE REGIONAL HEALTH SYSTEMS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This is an employment discrimination case in which Plaintiff Lynette Smith argues that her employer, Defendant LaPorte Regional Health Systems, terminated her employment based on her race. Before me is Defendant's Motion for Summary Judgment. Because there is no evidence that Smith was discriminated against at all, the Motion will be granted.

## BACKGROUND

Smith is an African-American woman and former employee of Defendant LaPorte Regional Health Systems in LaPorte, Indiana. She began working at LaPorte in November of 1999 as a "per diem" nurse and continued there until August of 2009.

Smith's *pro se* Complaint against LaPorte alleges her "civil rights Title VII were violated" because she "received illegal treatment and witnessed a group of others based on their race be violated under the Civil Rights Act Title VII and also receive[d] illegal treatment during [her] employment at LaPorte Regional Health System." [DE 1 at 2.] Smith attached to her Complaint a document entitled "Facts in Support of Complaint" in which she elaborated on this treatment. She alleges that she "was subject to illegal behavior such as harassment, belittling, assault, mental and verbal abuse on a regular basis," and the document attached to her Complaint

enumerates various "examples of some of the things [she] experienced." [DE 1-1 at 1.] These examples include:

- She was wrongfully disciplined by Human Resources following an incident in which she did not show up for work. [DE 1-1 at 1-2.]

- She was wrongfully questioned by Human Resources during an investigation into missing medication, which made her feel "uneasy" and "uncomfortable." [DE 1-1 at 1-2.]

- She was asked to submit to a "very traumatizing" alcohol and drug screening that made her feel "very ashamed and violated." [*Id.*]

- She was physically assaulted by a physician and reported the incident to Human Resources and alleges that "nothing was ever done and the issue was never discussed yet swept underneath the table." [DE 1-1 at 3.]

- She was treated by another physician in ways that were "very belittling and demeaning making [her] feel less than a person." [DE 1-1 at 3-4.]

- She was subjected to various incidents where a co-worker would make racially insensitive comments directed at other coworkers that were "very offensive." [DE 1-1 at 4.]

- She was unjustly accused of an incident of "work place violence," which ultimately precipitated her wrongful termination. [DE 1-1 at 4-5.]

Smith's deposition in this case, portions of which were attached as an exhibit to LaPorte's Motion for Summary Judgment, fleshes out many of these allegations.[1] Most of the incidents Smith feels aggrieved by occurred over the course of June and July in 2009, culminating in her eventual termination on August 6, 2009. First, on June 3, 2009, LaPorte's Security Department conducted an investigation following a report of misplaced or stolen

---

[1]Smith's Deposition is the central piece of evidence currently before me. In response to the Motion for Summary Judgment, Smith sent the court a letter addressed to me, which I have construed as her Response Brief [*see* DE 26]. Even giving Smith the liberal berth afforded a *pro se* Plaintiff, however, I can't construe this document as evidence since it is not an affidavit, is not alleged to be given under oath, and is not signed. In evaluating the factual record, I have thus relied on her deposition testimony.

medication from a patient's room in the intensive care unit. Smith was approached by a co-worker and asked if she had any knowledge of the missing medication after a patient had mentioned Smith by name as someone who had previously been in her room. [DE 22-2 at 17-22.] Smith was not interviewed by the security department in connection with the investigation, nor was she written up or disciplined in any way in connection with the incident. [DE 22-2 at 21.] Nevertheless, Smith felt as if she had been accused of stealing the medication. [*Id*.]

In July of 2009, LaPorte Hospital's human resources department was notified that Smith may have been using drugs or alcohol at work. [DE 22-2 at 23.] Human resources supervisor Lori Dudeck asked Smith if she would submit to a voluntary drug and alcohol screening, to which Smith did not object. Those tests apparently did not show any substance abuse, but Smith again felt aggrieved by submitting to it in the first place. [*Id*.]

Later that month, Smith was subjected to a "step one" Performance Improvement Process after she failed to report for work on June 18, 2009. [DE 22-3 at 62.] Smith's supervisor, Lisa Pinkstaff, documented the basis for the "step one" conference, and Smith acknowledged the disciplinary action by responding to the concerns in writing and signing the conference note. Smith stated that "[d]ue to [a] scheduling conflict, I made [an] error in my schedule due to changes." [*Id*.] The conference note states that Smith was also a "no call, no show" on November 25, 2008. [*Id*.]

Smith also testified at her deposition about various other incidents in the year prior to her termination. For instance, she testified that she was allegedly belittled by a Dr. Mendelowitz, though it's not clear from her testimony exactly how. [DE 22-2 at 26.] She also testified that two of her co-workers allegedly used a racially derogatory term in her presence, though the term

3

was apparently not directed at Smith. [DE 22-2 at 27.] She was also allegedly struck with a closed fist by a Dr. M. Tabib. [DE 22-2 at 24.] Smith verbally reported this incident to human resources, but she did not follow up with human resources and is unaware if any investigation was conducted following the alleged incident. [DE 22-2 at 24-26.]

In the midst of all these circumstances, Smith tendered her written resignation on or about July 24, 2009. [DE 22-2 at 30-31.] The resignation was apparently not motivated by her various frustrations with her work environment, however; rather, Smith indicated that her family decided to relocate to Indianapolis because her husband was promoted and received a job offer that he could not refuse. [*Id.*] Smith also indicated that she intended to finish two weeks of work through and including August 7, 2009. [*Id.*]

On August 6, 2009 – the last day before the resignation would be effective – Smith had a verbal "discussion" (Smith's word) or "confrontation" (LaPorte's word) with co-worker Angie Thomas. [DE 22-2 at 31-41.] Smith called Thomas about picking up some of her furniture from Thomas' apartment. [*Id.*] The performance improvement conference note regarding the incident states that Smith "called the Surgery desk to discuss a personal issue with a co-worker, that she told the co-worker "if I am going to lose something, you are going to lose something," and that the co-worker was "messing with the wrong person." [DE 22-3 at 63-64.]

Following this exchange Smith was contacted on her portable work phone and asked to report to supervisor Lisa Pinkstaff's office. [DE 22-2 at 37-38.] Smith reported to the office and met with supervisors Pinkstaff and Lori Dudeck, and security supervisor Robyn Ortt to discuss the incident. [*Id.*] During the meeting, Smith told Dudeck that "what goes around comes around and this [will] come back at you." [DE 22-2 at 38.] The hospital then decided to terminate

4

Smith's employment immediately based her confrontation with Thomas, and she was escorted out of the hospital by security. [DE 22-2 at 39.] Even though she was terminated on August 6, 2009, Smith was paid by LaPorte Hospital through August 7, 2009, as requested in her letter of resignation. [DE 22-2 at 40.]

Later that month, on or about August 19, 2009, Smith filed a Charge of Discrimination with the EEOC against LaPorte Hospital alleging that she "was discriminated against on the basis of [her] race, Black, in violation of Title VII of the Civil Rights Act of 1964[.]" [DE 22-3 at 65.] Following an investigation into Smith's allegations, the EEOC issued a Dismissal and Notice of Rights. [DE 22-3 at 68.] Smith then initiated this case.

## ANALYSIS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). Employment discrimination cases, while often turning on factual questions, are nonetheless amenable to summary judgment when there is no genuine dispute of material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *Cliff v. Board of School Comm'r*, 42 F.3d 403, 409 (7th Cir. 1994).

Smith's Complaint brings one count: discrimination based on her race, color, or national origin pursuant to Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color . . . or national origin." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may prove intentional employment discrimination under Title VII by using either the "direct method" or "indirect method." *Rhodes v. Illinois Dep't. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir. 1998)). Smith does not indicate which method she believes applies here, so I will analyze both possible methods.

## I.     Direct Method

Under the direct method, Smith must present direct or circumstantial evidence that her termination was motivated by her race. Direct evidence is rare, as it "essentially requires an admission by the decision-maker" that it took actions for unlawful reasons. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). The direct method of proof can also entail presentation of "'a convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 733–34 (7th Cir. 2011). The focus of the direct method is whether the evidence "points directly to a discriminatory reason for the employer's action." *Id.* at 734, n.3.

A plaintiff using the "convincing mosaic" approach to prove a discrimination claim under the direct method may present any of three broad types of circumstantial evidence. *Id.* at 734.

6

The first type includes evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* The second type is evidence showing that the employer "systematically treated other, similarly situated, non-[black] employees better." *Id.* Finally, the plaintiff may point to evidence that she suffered an adverse employment action and that the employer's justification is pretextual. *Id.*

Smith has provided no direct evidence of intent to discriminate against her on the basis of race. That is, there is simply no evidence in the record that could lead to an inference that her termination resulted from discriminatory intent: there is no evidence of suspicious timing or ambiguous statements, no evidence that similarly situated employees were treated better than she was, and no evidence that her reason for being fired (threatening an employee) was a pretext. Indeed, the timing of the termination – a mere one day before her resignation was to be official – leads to exactly the opposite inference. If LaPorte was in some elaborate, long-term scheme to cover-up an alleged racial animus for terminating her – as Smith indicates in her testimony that all the events "occurred within this six-month time period where they were trying to create the paper trial" [DE 22-2 at 23] – then why would it fire her the day before she was to resign? Without any direct or circumstantial evidence of intentional discrimination, Smith's case fails under the direct method.

## II. Indirect Method

Under the alternative method of proof, the indirect method, the plaintiff presents a *prima facie* case of discrimination by offering evidence (1) that she was a member of a protected class, (2) that she performed her job satisfactorily, (3) that she suffered an adverse action, and (4) that

similarly situated individuals outside the protected group were treated more favorably. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973); *Peters v. Renaissance Hotels Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002). If she makes such a showing, the employer must offer evidence that there was a legitimate non-discriminatory reason for its action; the burden then shifts back to the plaintiff to show that a jury could find that the reason articulated by her employer was a pretext. *Cianci*, 152 F.3d at 725.

LaPorte says that Smith cannot make out her *prima facie* case and it raises some persuasive arguments in that regard. But I will skip directly to the pretext analysis. Although the question of pretext is normally only addressed once the plaintiff establishes a *prima facie* case, the Seventh Circuit has repeatedly held that it is perfectly permissible to skip directly to the pretext analysis if that is case dispositive. *See Keeton v. Morningstar, Inc.*, __ F.3d __, 2012 WL 130456, at *5 (7th Cir. Jan. 13, 2012); *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 478 (7th Cir. 2010); *Bodenstab v. County of Cook,* 569 F.3d 651, 657 (7th Cir. 2009). Even construing every inference in Smith's favor (as I must as this stage), there is uncontradicted evidence in the record that LaPorte had a legitimate non-discriminatory reason to fire her. LaPorte believed that Smith threatened another employee, and, unsurprisingly, this behavior is grounds for immediate dismissal under its employee manual. Having provided this legitimate, non-discriminatory reason, the burden shifts back to Smith and, "to avoid summary judgment, [she] must present evidence that the reason proffered by [LaPorte] is pretextual." *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005).

Smith attempts to meet this burden by arguing that the incident of threatening behavior was all a misunderstanding and that she did not in fact threaten her coworker. But even if that is

8

the case, it's not enough for Smith to show that LaPorte made a mistake. Instead, in the context of a discrimination claim, she has to provide some evidence that LaPorte intentionally made this mistake – in other words, that it *lied* – in order to cover up the fact that it wanted to fire her based on race. As the Seventh Circuit has put it, "it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.*

Thus, Smith has to show that LaPorte intentionally fabricated or exaggerated this incident of her threatening behavior so that it could cover up its intention to fire her based on her race. Smith has failed to present any such evidence. Indeed, there is simply "nothing in the record to support a finding that [LaPorte's] stated reasons for . . . terminating [Smith] were fabrications." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 (7th Cir. 2008). And what sense would it make for LaPorte to concoct the whole thing? As I mentioned above, the timing of the termination – a mere one day before her resignation was to be official – demonstrates that LaPorte's stated reason wasn't a pretext. It defies commonsense to believe that an employer would trump up a phony charge in order to cover up a racially motivated firing when the employee being sacked has already resigned and is set to leave the following day. Smith cannot show that LaPorte's stated reason for firing her was a pretext. Accordingly, LaPorte is entitled to summary judgment on Smith's claim that LaPorte fired her because she is African-American.

## CONCLUSION

Even construing all inferences in her favor, Smith has not provided sufficient evidence that LaPorte fired her with a discriminatory intent. Accordingly, LaPorte Regional Health

9

Systems' Motion for Summary Judgment [DE 21] is **GRANTED**.  The clerk shall **ENTER FINAL JUDGMENT** in favor of LaPorte Regional Health Systems stating that Plaintiff Lynette Smith is entitled to no relief.  The clerk shall treat this civil action as **TERMINATED**.  All pending dates and motions in this case are **VACATED**.  The clerk is instructed to send an a copy of this opinion to Smith at the address on file with this Court.

    **SO ORDERED.**

    ENTERED: February 7, 2012

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
